UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Donna Walls,                                )
                                            )
    Plaintiff,                         )
                                            )
v.                                          )    No. 14 CV 50136
                                            )    Magistrate Judge Iain D. Johnston
Carolyn W. Colvin, Acting                   )
Commissioner of Social Security,            )
                                            )
    Defendant.                         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Walls brings this action under 42 U.S.C. §405(g), seeking remand of the decision denying disability benefits. Before the Court are cross-motions for summary judgment.

## BACKGROUND

Plaintiff filed her application for benefits on September 13, 2011. She was then 51 years old. She previously was awarded disability benefits around 1992, which were then stopped around 2006 when she went back to work as a psychiatric nurse. She worked as a nurse until October 2010. R. 52-53. On this job, plaintiff had problems, such as being "tardy almost every day." R. 64. In December 2010, she quit working and began receiving long-term disability payments under a private insurance policy. R. 57.

The medical record is lengthy with numerous visits to multiple doctors. Plaintiff's opening brief, supported by the record, contains a detailed chronology of them. For this appeal, it is sufficient to note that plaintiff had multiple problems, including spinal problems (as confirmed by several MRIs), sleep issues (including both restless sleep and hypersomnia), chronic fatigue, fibromyalgia, right ankle problems, heart problems, depression, and anxiety. She tried numerous

1

medications, although she stopped using some of them because they made her sleepy. R. 57, 61, 63.

A hearing was held before the administrative law judge ("ALJ") on October 9, 2013. Plaintiff testified that she experienced pain down her lower back, through her legs, and in her right ankle where she had surgery. R. 46. Her symptoms varied. On good days, she could walk for 45 minutes and work in the yard. R. 45. She estimated that she had five good days a month.

On December 13, 2013, the ALJ found plaintiff not disabled. The ALJ concluded that plaintiff had severe impairments of fibromyalgia, mild obesity, depression, anxiety, and attention deficit disorder. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform medium work. The ALJ gave "controlling weight" to the opinion of Dr. Archana Shrivastava because she allegedly had the "most longitudinal familiarity" with plaintiff, having seen her since 2009 and having acted as her primary care physician. The ALJ also gave Dr. Shrivastava's opinion greater weight because she viewed a videotape given to her by plaintiff's private disability insurance carrier that supposedly showed plaintiff conducting a garage sale in June 2012. As discussed below, the ALJ gave the other doctors' opinions lesser or no weight.

**DISCUSSION**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility

determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence).

Plaintiff raises three arguments: (i) the ALJ failed to follow the treating physician rule; (ii) the ALJ made an improper credibility determination; and (iii) the ALJ failed to consider plaintiff's hypersomnia. The Court finds that a remand is warranted based on the first argument.

The treating physician rule requires the ALJ to "consider *all*" of the following factors in weighing *any* medical opinion: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6). These "checklist factors" are designed to help the ALJ "decide how much weight to give to the treating physician's evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). But within the weighing process, treating physician opinions receive particular consideration. A treating physician's opinion is entitled to "controlling weight" if it is (i) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is (ii) "not inconsistent with the other substantial evidence in [the] case." *Id.* If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it, but must proceed to the second step and determine what specific weight, if any, the opinion should be given by using the checklist. *Moss v. Astrue*¸ 555 F.3d 556, 561 (7th Cir. 2009).

Plaintiff argues that the ALJ failed to follow this rule in assessing the opinions of Dr. Rone. On April 9, 2013, Dr. Rone completed a 5-page form on which he stated that plaintiff had been diagnosed with fibromyalgia and suffered from chronic pain, fatigue, insomnia, and

3

sedation from medications. R. 651-655. He described her pain as "severe, diffuse, intermittent and minimally responsive to medication" and stated that she was incapable of even "low stress" jobs. He noted that she could walk a half of a city block, could sit one hour at a time, could stand 30 minutes at a time, and needs frequent unscheduled breaks. Plaintiff argues that, if credited, these opinions should have led to a finding of disability.

> The ALJ gave "no weight" to these opinions. Here is the ALJ's reasoning:
>
> The undersigned similarly is assigning no weight to the April 9, 2013 medical opinion of Arthur Rone, M.D., who suggested that fibromyalgia has a poor prognosis and is made worse by anxiety and depression (27F/4,7). This source listed no specific dates of treatment or length of contact (27F/4). After review of the record, he appears to have seen the claimant even less than Dr. Kale and provided no medical basis to infer that his remarks are well supported. He indicates in April 2013 that pain is severe and diffuse, but intermittent and only minimally responsive to medication. The term "intermittent" is a contradiction in terms as far as use of the term "severe," and, as discussed above, the claimant actually is very active and has taken pain medication on only a marginal basis, which is inconsistent with the opinions of this medical source that she is very limited. This source appears to lack longitudinal familiarity and his opinions are not well supported. Additionally, his opinions are inconsistent with other substantial evidence.

R. 29-30. Plaintiff complains that the ALJ failed to apply the checklist or explain his reasoning. Contrary to the ALJ's suggestion that Dr. Rone provided little treatment, plaintiff asserts that she saw him "at least six times" and that he coordinated her care with other doctors. Plaintiff also argues that Dr. Rone's opinions were consistent with three MRIs taken from 2010 to 2012. R. 433, 577, 663. Plaintiff asserts that her persistent complaints of chronic pain were extensively documented and that none of her doctors doubted those complaints when prescribing medication.

> In its brief, the Government devotes only the following paragraph to this argument:
>
> Treating physician A. Rone, M.D., opined that plaintiff was disabled. (Tr. 651-55.) Dr. Rone based his opinion on plaintiff's allegations of diffuse pain and her depressed affect. (Tr. 651.) The ALJ rejected Dr. Rone's opinion as not well supported. (Tr. 30.) That is, the theme of the ALJ's decision is that plaintiff's subjective allegations were not credible. "And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." *Bates v.*

4

> *Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). Thus, to the extent that Dr. Rone relied on plaintiff's subjective allegations, whether the ALJ reasonably rejected Dr. Rone's opinion depends on whether the ALJ reasonably evaluated plaintiff's credibility.

Dkt. #18 at 4. This paragraph is so conclusory and so lacking in analysis that it is tantamount to a concession. The Government does not respond to *any* of plaintiff's arguments. As for the assertion that the ALJ did not use the checklist, the Government offers no defense. As for the factual assertions, such as the claim that Dr. Rone saw her six times, the Government again provides no rebuttal. As for persistent pain complaints, the Government is silent. Instead, the government offers a single argument, which is that the ALJ was justified in rejecting Dr. Rone's opinions *in toto* because they were allegedly based on plaintiff's "subjective allegations."[1]

This argument is unpersuasive. First, it was not explicitly relied on by the ALJ. Therefore, if this Court were to rely on it, it would violate the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced").[2] Second, the Government's argument rests on an undeveloped factual premise. The Government oddly frames its argument in the subjunctive, stating that Dr. Rone's opinions would be invalid "to the extent that" he relied on subjective allegations. This begs the question: does the Government actually believe that Dr. Rone relied on subjective allegations? There is a related ambiguity. Is the Government asserting that Dr. Rone *only* relied on self-reports or merely that he relied on

---

[1] The proper application of the treating physician rule should result in the total rejection (*i.e.*, assigning "no weight") of the treating physician's opinion only on rare occasions. *See* SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and adopted by the adjudicator.")

[2] The Court notes its continuing view that the Seventh Circuit should revisit its jurisprudence relating to the *Chenery* doctrine. *Tucker v. Colvin*, 2015 U.S. Dist. LEXIS 149905, *17 n.1 (N.D. Ill. Nov. 4, 2015); *Swagger v. Colvin*, 2015 U.S. Dist. LEXIS 151502, *2 n. 1 (N.D. Ill. Nov. 4, 2015).

them *along with* objective evidence? As noted above, plaintiff claims that Dr. Rone relied on objective evidence such as MRIs. The record supports this claim. *See, e.g., Ludwig v. Colvin*, 2014 U.S. Dist. LEXIS 42289, *30 (N.D. Ill. Mar. 27, 2014) (error to reject treating physician opinion when doctor relied upon more than just subjective complaints).Third, the Government fails to acknowledge that doctors often rely, in part, on a patient's subjective reports. *See, e.g., Harbin v. Colvin*, 2014 WL 4976614, *5 (N.D. Ill. Oct. 6, 2014) ("Fibromyalgia is diagnosed primarily based on a patient's subjective complaints and the absence of other causes for the complaints.").[3] Although the Government claims that Dr. Rone improperly relied on subjective allegations, the Government does not consider whether other doctors, whose opinions were

---

[3] In her single paragraph argument, the Commissioner cites *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). In doing so, the Commissioner accurately quotes the opinion which states the following: "And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." The *Bates* court cited *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) to support this proposition. Although it is understandable that a good advocate will rely upon citations that support their argument and the Court does not take issue with the Commissioner's reliance on *Bates*, there are problems with the Commissioner's assertion. First, the *Bates* court said an ALJ could "discount" the opinion. This Court views the word "discount" to mean "give less than controlling weight," not completely reject, or as the ALJ put it here, give "no weight" to the opinion. This Court does not believe the Seventh Circuit uses the words "discount" and "reject" interchangeably. Second, the *Ketelboeter* court – upon which *Bates* relied – qualified its position by stating that an ALJ may "discount" the treating physician's opinion if that doctor *solely* relied upon subjective complaints. *Ketelboeter*, 550 F.3d at 625; *see also Cuerin v. Colvin*, 2015 U.S. Dist. LEXIS 138948, *24 (N.D. Ill. Oct. 13, 2015) (emphasizing that the Seventh Circuit used the word "solely"); *Hampton v. Colvin*, 2013 U.S. Dist. LEXIS 174614, *21 (N.D. Ill. 2013, Dec. 12, 2013) (same). Third, several of the severe impairments at issue here were mental impairments, which by their nature will rely, in great part, on the subjective statements and symptoms. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("psychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings"); *Korzeniewski v. Colvin*, 2014 U.S. Dist. LEXIS 51004, *21 (N.D. Ill. Apr. 14, 2014 ("All diagnoses, particularly those involving mental health conditions, require consideration of the claimant's subjective symptoms."); *Hampton*, 2013 U.S. Dist. LEXIS 174614 at *22 ("With mental issues, however, subjective reports to a treating source often play a more important role in the treatment relationship than they do with physical issues."). For an excellent discussion of the fundamental problems with the entire process, *see Retlick v. Astrue*, 930 F. Supp. 2d 998, 1008-09 (E.D. Wisc. 2012).

6

credited, also did so. For example, the ALJ noted that plaintiff told Dr. Shrivastava at one visit that her mood was "okay." Not only did the ALJ rely on this single self-report, the ALJ weighed it "very heavily in the outcome." R. 27. In this instance, the ALJ showed no reluctance whatsoever in crediting a subjective report.

It is true that the ALJ made a few passing nods to some of the checklist factors. In the third and four sentences of the above paragraph, the ALJ arguably referred to the first two checklist factors: length of treatment and nature of treatment relationship. However, these sentences are confusing. In the third sentence, the ALJ gives the impression that no one knows how often plaintiff saw Dr. Rone because he "listed no specific dates of treatment or length of contact" on the questionnaire. But in the next sentence, the ALJ makes a critical judgment about the length of treatment, stating that Dr. Rone "appears to have seen the claimant even less than Dr. Kale." This sentence suggests the ALJ, in fact, knew how often plaintiff saw Dr. Rone, but the problem is that the ALJ never explains how often plaintiff saw Dr. Kale. It is thus unclear whether the ALJ was aware, as plaintiff now maintains, that she saw Dr. Rone six times.

The ALJ also failed to apply the checklist consistently to the opinions of the other doctors. In some instances, the ALJ noted that a doctor's treatment relationship was too short to be reliable, but in others the ALJ readily accepted a doctor's opinion without mentioning this factor. The ALJ repeatedly invoked the vague phrase "longitudinal familiarity" but did so haphazardly and without stating precisely how long or how often the treatments were in each case. For example, the ALJ discounted the opinions of Dr. Kale because he lacked "longitudinal familiarity" with plaintiff's condition even though Dr. Kale saw plaintiff "between July 2010 and June 2011." Apparently, the ALJ felt an 11-month relationship was too short to be reliable. But,

7

at the same time, the ALJ readily credited the opinions of Dr. Rafiq, who only saw plaintiff once, and Larry Kravitz, who never examined her.

Notably, the ALJ gave "controlling weight" to the opinions of Dr. Shrivastava. One key reason was that she "appeared to have the most longitudinal familiarity," having seen plaintiff "on many occasions" since 2009. Because the ALJ used the vague term "many," the Court cannot determine the precise number of visits. More problematically, in its independent review of the record, the Court could find no confirmation that Dr. Shrivastava began seeing plaintiff in 2009. Rather, the records suggest that the relationship began two years later on August 29, 2011. R. 440. Immediately after this visit, Dr. Shrivastava sent a note to Dr. Rone thanking him for the referral, suggesting this was the first visit and also that Dr. Rone was the primary physician. R. 441. At a later visit, Dr. Shrivastava noted that plaintiff was "*initially* seen in August 2011," again suggesting that the first visit was in 2011. R. 909 (emphasis added). Thus, contrary to the ALJ's assertion, the relationship did not begin in 2009. These facts undermine the ALJ's claim that Dr. Shrivastava was plaintiff's "primary care physician" who had the longest relationship with her.

For the above reasons, a remand is warranted under the treating physician rule. Given this conclusion, the Court need not analyze plaintiff's remaining arguments, which are less developed in any event. However, one issue deserves comment. Plaintiff has complained that the ALJ unfairly relied on a video showing her conducting a garage sale in June 2012. This Court agrees. First, the ALJ drew a much broader conclusion than was justified by this one video. Specifically, the ALJ stated: "The record reflects that she has been holding garage sales since at least June 2012." R. 22. The plural "garage sales" and the phrase "since at least June 2012" give the impression that plaintiff was regularly conducting garage sales over a multi-year period.

However, as far as the Court can determine, there is no evidence other than this video which refers only to *one* alleged sale. So, the ALJ's broader factual conclusion is misleading. Second, even if plaintiff conducted more than one garage, this would not necessarily be inconsistent with her testimony. She testified that she has some good days when she is able to "get a lot done," a point her sister confirmed. *See* R. 48, 230. Third, it is not simply that the ALJ aggressively construed this one piece of evidence, but that he relied on it over and over, mentioning *seven separate times*. R. 22, 24, 26, 27 (two times), 28, 30. This video is referenced at almost every juncture, from the very beginning under the guise of analyzing substantial gainful activity, to the listing analysis, and then again in the RFC analysis. The ALJ even relied on this video to discount a doctor's opinion because he had not been able to see the video. Reliance on a single observation, one that Dr. Shrivastava even qualified by noting only "apparently" showed plaintiff conducting a garage sale, is contrary to the ALJ's repeated emphasis on the importance of the longitudinal record. Moreover, the ALJ never asked plaintiff at the hearing whether she regularly conducted garage sales. On remand, the ALJ should provide a better explanation if this evidence is again to be relied on so heavily.

In remanding this case, this Court is not suggesting that the ALJ reach a particular conclusion, merely that the ALJ provide enough information to understand the underlying reasoning process. The Court recognizes that plaintiff saw many doctors and that the record is complex. But it is especially important in this situation to consistently and fairly apply the treating physician rule.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the decision of the ALJ is remanded for further consideration.

Date: November 13, 2015          By: _____
                                      Iain D. Johnston
                                      United States Magistrate Judge